JoNes, OMef Judge,
delivered the opinion of the court:
The single issue in this case is the value of the steamship Fleetwood, which, together with three other vessels, all of which were owned by the plaintiff, was requisitioned by the defendant on June 17, 1942.
After a series of meetings in an effort to arrive at a basis <of settlement, the other three vessels were returned to plaintiff and the Fleetwood alone was retained by the defendant.
The War Shipping Administration on March 26, 1944, •determined that just compensation for the Fleetwood was the sum of $40,000, which offer was rejected by the plaintiff. On May 21,1945, the defendant paid plaintiff $80,000, which was 75 percent of the amount determined as just compensation. The suit is for the balance of what plaintiff claims as just compensation at the time of the taking. The plaintiff asserts that this value is $300,000, and therefore sues for a net •amount of $270,000, plus interest.
The facts are set out in detail in the findings and will be summarized here.
The Fleetwood was a single screw bulk carrier vessel. She had a steel hull and double bottom, and was built in 1903. Her length was 247 feet, breadth 41 feet, and her depth was a little more than 18 feet, her gross tonnage being 1,593 and her net 1,124.
For the first 12 or 13 years after her construction she was operated in salt or brackish waters on the St. Lawrence River.
*359 Tbe Fleetwood was purchased by plaintiff from the original owner in 1934 for the sum of $6,000. Plaintiff immediately expended $37,000 for alterations and improvements for the trade in which she was to be used, which was the water transportation of bulk commodities and freight such as steel, scrap, iron, stone, grain and automobiles.
From the date of her purchase in 1934 the plaintiff operated the vessel on the Great Lakes between Detroit and Cleveland, Conneaut and Buffalo. At the same time plaintiff -owned and operated four other vessels in the same service and over the same run. Although at times numerous other commodities were transported, the vessel’s principal use was for hauling steel and scrap iron.
The regular operating season on the Great Lakes begins April 15 and closes on November 30 of each year. At the end of the season the plaintiff laid up the vessels at the docks for repair, maintenance and fit-out for the following season.
During the five years preceding the date of requisition the Fleetwood earned an annual average net profit, after deducting overhead but not depreciation, of $56,386.27. The other vessels which were operated on the same run were used for a somewhat less number of days and earned a somewhat smaller profit, the average annual net profit on the same basis for the four vessels during the five-year period amounting to -$39,293.06.
The machinery and mechanical equipment of the Fleetwood at the time of requisition were the same as originally installed in 1903 with the exception of a generator placed on the ship about 1917 and two mooring engines which had been installed some 15 or 18 years prior to requisition. No major repairs had been performed on the engine or mechanical equipment after 1934, but the wearing parts had been renewed or replaced from time to time. To fit-out the Fleetwood for the navigating seasons 1937 through 1941 plaintiff expended the sum of $28,436.08. During the winter of 1941 plaintiff expended $14,831.68 to fit-out the vessel for the 1942 navigating season. During the five-year period from 1937 through 1941 plaintiff expended $13,463.28 for repairs during the navigating season.
*360 After the requisitioning the War Shipping Administration made a detailed survey of the condition of all portions of the hull structure and an external examination of the machinery and mechanical equipment. Since the vessel was requisitioned for the purpose of using her as a coal carrier between ports on the Atlantic Coast, the defendant entered into a contract with the Nicholson Terminal and Dock Company for repairing, altering and converting the Fleetwood for such service on the Atlantic Coast. After the vessel was dry-docked and gone into additional repairs and alterations were made.
While at the time of the requisition the Fleetwood was in good condition with the exception of the main condenser,, she had long been used for hauling steel, scrap, and other-rough cargo, and had operated without the use of tugs. Most of the main transverses throughout the vessel were-indented or bent, the distortion varying from slight to heavy. The details of the vessel’s condition are set out in finding 14..
The defendant expended a total of $304,472.61 for repairing, altering, and converting the vessel.
Ordinarily vessels of the type involved here have a useful life on the Great Lakes of from 66 to 60 years, depending-somewhat upon the manner in which they are maintained. The Fleetwood had operated in salt or brackish water for about 13 years, and thereafter altogether on the Great Lakes. She had been maintained and repaired sufficiently to meet the requirements of the Coast Guard and to retain her class with the American Bureau of Shipping, but her hull structure was in need of major repairs. With a considerable outlay for such repairs the Fleetwood would have had a remaining useful life of about 16 years after the date of the requisitioning..
There were not sufficient sales of vessels comparable to the-Fleetwood near enough to the date of the requisitioning to-establish the market price for such vessels at that time.
The wide variation in the values placed on the vessel by the-plaintiff and the defendant is due in large measure to the-considerable differences in the estimates of reproduction costs and the differences in the opinions of the experts and others familiar with shipping as to what should govern in the *361 determination of the value at the time of the requisitioning. The plaintiff claimed that reproduction costs of a vessel of this type would have been more than $1,000,000. The defendant set the figure at $603,000.
The plaintiff, however, relied in large measure upon the earning power of this vessel during the five years preceding the date of the taking. As was said, however, in the case of Wilson Line, Incorporated, v. United States, 111 C. Cls. 764, the varying facts of use, business acumen and management which influence this factor detract from the weight that should be given to this element. There is no doubt that the plaintiff was an efficiently operated business concern. See also Kimball Laundry Co. v. United States, 338 U. S. 1.
We have considered the reproduction costs which we have found to be $650,000 on June 17,1942; the fact that this vessel was 39 years of age; the condition of the vessel, which, while in operating condition for the Great Lakes, was in need of major repairs; the fact that she had been operated for a number of years in salt or brackish waters. We have also .given consideration to the customary methods of depreciation which are valuable as guideposts. We have even looked over the evidence which the plaintiff offered in rebuttal as to value based on capitalization of earnings,, which evidence was excluded by the commissioner because offered in rebuttal. We have also considered the original cost of the vessel to the plaintiff, the amounts expended upon repairs, replacements and alterations, and the general condition of the vessel at the time of the requisitioning; the apparent years of useful life as indicated by the facts of the case, and also the fact that repairs and replacements would probably be greater during the remaining years of the use of the vessel than in the previous years.
Considering all these factors we find that the reasonable value of the vessel Fleetwood at the time of the taking, exclusive of any enhancement in value due to the causes necessitating the taking, is the sum of $80,000. The plaintiff is entitled to recover $50,000, being the unpaid balance of the reasonable and fair value of the Fleetwood at the time and place of the taking; it is also entitled to recover, as a part of *362 just compensation, interest at tbe rate of four percent on $80,000 from June 17,1942, to May 21,1945; and on tbe same basis interest at tbe same rate on $50,000 from May 21, 1945,. to date of payment.
It is so ordered.
Howell, Judge; MaddeN, Judge; Whitaker, Judge; and. Littleton, Judge, concur.